UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYMENT LOGISTICS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTHOUSE NETWORK, LLC, et al.,<br><br>Defendants. | Case No.: 18-cv-0786-L-AGS<br><br>**ORDER GRANTING IN PART AND PLAINTIFF'S MOTION FOR DISCOVERY (ECF No. 26)** |

On July 23, 2018, the Court held a hearing on plaintiff's motion for expedited discovery. (CD# AGS 7/23/18 4:03:50-5:25:20.) Plaintiff requests leave to conduct discovery to support its motion for a preliminary injunction that seeks to freeze a merger between defendants. Having fully considered the parties' briefing and arguments, the plaintiff's motion for expedited discovery (ECF No. 26) is granted in part and denied in part as set out below.

## **BACKGROUND**

The parties in this litigation are all involved in "payment processing interfaces and merchant account services used in point-of-sale systems for mid-to-large table-service restaurants." (Compl., ECF No. 1, at 6 (alterations omitted).) In sum, the parties offer services that aid restaurants in processing electronic payments, such as credit and debit

1

cards. Plaintiff brought this action alleging that defendants are "usurping control over the . . . payment processing market" in violation of antitrust laws. (ECF No. 1, at 13.)

As explained by the parties at the hearing, when a guest is at a restaurant, the waiter inputs the order into a computer called the point-of-sale (POS) system. The POS system has customized software and applications installed to track orders, process payments, and fulfill other related functions for the restaurant. When the guest pays the bill with a credit or debit card, the server swipes the card then a payment interface reads the card and transmits the data to a merchant account service. The payment interface may be on the POS system itself or on a separate machine similar to one a card user might recognize from having to enter their PIN for a debit card transaction. Once the merchant account service receives the payment information it seeks authorization from the relevant financial institution to charge the card. If the transaction is approved, the authorization is transmitted back through the merchant account service, payment interface, and POS system to the waiter who then prints out the bill for the guest to sign. (*See generally* CD# AGS 7/23/18 4:06:00-4:08:40. *See also* ECF No. 1, at 7-12.)

This payment-processing arrangement involves hardware, software, and services provided by several entities, each of which charge various fees and prices for their products. Plaintiff is a payment processing company that provides payment interfaces and merchant account services. (ECF No. 25-1, at 6.) Defendant Lighthouse Networks, LLC, is also a payment interface and merchant account service provider. Recently, Lighthouse began acquiring and merging with other entities involved in the payment-interfacing process. (*See generally id.* at 13-16.) The "tipping point" that has allegedly enabled Lighthouse to being eliminating other payment-interface competitors is the complained-of merger with Shift4 Corporation, resulting in Shift4 Payments, LLC. (*Id.* at 14.) If the merger is completed, plaintiff contends that Shift4 Payments will be able to control which payment interfaces restaurants and merchants will be able to offer. (*Id.* at 15.) Thus, plaintiff seeks a preliminary injunction to stop the merger between Lighthouse and Shift4 Corp, and seeks limited expedited discovery to support its application.

**DISCUSSION**

The court may grant expedited discovery if the movant shows good cause by demonstrating that the need for the discovery outweighs the prejudice to the other party. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002). Generally, good cause exists where the requested discovery is reasonable in light of the circumstances. *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (citation omitted). In the Ninth Circuit, "[f]actors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (alterations and citations omitted).

The central issue of contention between the parties is the breadth of the discovery requests and the burden compliance would impose. Plaintiff filed a motion for preliminary injunction on June 29, 2019, concurrently with this request for expedited discovery (*See* ECF Nos. 25 & 26.) The complaint alleges violations of Section 7 of the Clayton Act, which "prohibits mergers whose effect 'may be substantially to lessen competition, or to tend to create a monopoly.'" *Fed. Trade Comm'n v. Warner Communications Inc*, 742 F.2d 1156, 1160 (9th Cir. 1984) (quoting 15 U.S.C. § 18). To show a likelihood of success on the merits, plaintiff proposes serving five requests for production and conducting five depositions "to obtain further evidence about the transaction's impact on competition[.]" (ECF No. 26-1, at 2.)

**A.  Requests for Production**

Plaintiff's draft requests for production seek documents that: (1) "discuss, consider, propose, analyze, recommend, or approve the Merger" to defendants' boards of directors; (2) show market shares of POS systems or (3) payment interfaces in the relevant market for 12 months before and after the merger; (4) identify competitors in the market for 12 months before and after the merger; and (5) support any efficiency defense defendants may

3

raise. (*See* ECF No. 28-11, at 3-9.) Plaintiff contends that the document requests are narrowly tailored and modeled after information sought by the federal antitrust agencies prior to a merger, referencing the Hart-Scott-Rodino Antitrust Improvements Act of 1976. (ECF No. 26-1, at 2.) The Hart-Scott-Rodino Act requires entities in a merger to file "documentary material and information relevant to a proposed acquisition as is necessary and appropriate to enable the Federal Trade Commission and the Assistant Attorney General to determine whether such acquisition may, if consummated, violate the antitrust laws." 15 U.S.C. § 18a(a) & (d). The defendants didn't make a Hart-Scott-Rodino filing, and, as a result, the information is not otherwise publicly available.[1] But plaintiff assumes "[t]he information is likely already compiled in some form, as required for closing the acquisition." (ECF No. 26-1, at 7.)

Defendants call the requests "sweeping" and argue that plaintiff has "not made any attempt to limit its document production requests . . . [or] address the fact that its requests potentially include a large number of documents, many of which may contain confidential information that would require redaction." (ECF No. 28, at 11-12 (alterations and citations omitted).) But plaintiff indicated in both its briefing and at oral argument that defendants "refused to meet and confer to narrow the document requests[.]" (ECF No. 29, at 2.) In any event, the Court has broad discretion to tailor discovery. *Crawford-El v. Britton*, 532 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly[.]" (citation omitted)).

Defendants' arguments about the burden the requests appear to pose overlook a fundamental principle: a party need only produce information in its "possession, custody, or control" "as they are kept in the usual course of business[.]" Fed. R. Civ. P. 34(a) & (b)(2)(E). And "a party need not provide discovery of electronically stored information

---

[1] The parties debate whether the merger reached the threshold that would trigger Hart-Scott-Rodino reporting requirements. (*See, e.g.*, ECF No. 25-1, at 8 n.6.)

4

from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Defendants need not recruit experts, create any information they do not already have, or make painstaking efforts to extract ESI from a broad range of custodians to respond to the requests.

Consequently, the Court will permit plaintiff to serve some requests for production and will provide defendant a longer period to respond than the 14 days proposed by plaintiffs. By August 31, 2018, defendants must produce documents responsive to Draft Request for Production No. 1 (*see* ECF No. 28-11, at 9.) In addition, they must produce any documents, communications, or electronically stored information available to them after reasonable inquiry that relate to the market share for (a) point of sale systems or (b) payment interfaces for mid-to-large table service restaurants, from August 2017 to the present. If defendants determined they weren't subject to the Hart-Scott-Rodino Act, some relevant information about this determination should be on hand and available. Alternatively, due diligence inquiries are vital to merger and acquisition transactions, and it can be presumed that some information gathered for this purpose is responsive and readily available.

**B.     Depositions**

Plaintiffs also seek to depose five individuals who "have knowledge of the circumstances, strategies, and motives surrounding the decisions to combine Lighthouse and Shift4 Corp," and who can authentic any documents produced. (ECF No. 26-1, at 6.) However, the five individuals are defendants' company executives and "[p]reparing and producing the high-level company officers . . . would be unreasonably intrusive and burdensome to Defendants and would be detrimental to their operations." (ECF No. 28, at 5.) Indeed, the time, money, and effort that would be expended by the deponents, the parties, and their counsel is not commensurate with plaintiffs' need for the proposed discovery. Plaintiff's counsel fails to show how the individuals' strategies or motives are relevant to succeeding on a Clayton Act, Section 7 claim, and fails to show why such

5

deposition discovery, if discoverable, should be expedited. Thus, the Court denies, at this time, plaintiff's request for leave to take any depositions.

**CONCLUSION**

The Court finds that permitting limited discovery on an expedited basis is appropriate to aid plaintiff in its motion for preliminary injunction. In antitrust matters challenging mergers, a plaintiff's fate often rests on the outcome of a motion for preliminary injunction. *See United States v. BNS Inc.*, 858 F.2d 456, 461-66 (9th Cir. 1988) (The public interest "could be harmed irreparably by permitting a merger to become a *fait accompli* . . . [because] the unwinding of a completed merger would present mammoth obstacles."); *Fed. Trade Comm'n v. Staples, Inc*., 970 F. Supp. 1066, 1091 (D.C. Cir. 1997) ("'Unscrambling the eggs' after the fact in not a realistic option in [some] case[s]."). The Court authorizes the following limited discovery, which must be responded to by August 31, 2018:

(1) Defendants must produce documents responsive to plaintiff's first request for production. (*see* ECF No. 28-11, at 9.)

(2) Defendants must produce any documents, communications, or electronically stored information available to them after reasonable inquiry that relate to the market share for (a) POS systems or (b) payment interfaces for mid-to-large table service restaurants, from August 2017 to the present.

(3) Defendants must produce documents gathered in anticipation of being filed as required by the Hart-Scott-Rodino Act, if such a group of documents exist. This does not require defendants to create a package of documents. Instead, it only requires

them to produce any documents that were part of a previously existing package which defendants would have submitted to regulatory authorities but for the fact that defendants determined the threshold had not been met.

**IT IS SO ORDERED.**

Dated: August 14, 2018

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE