UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYMENT LOGISTICS LIMITED,<br><br>                              Plaintiff,<br><br>v.<br><br>LIGHTHOUSE NETWORK, LLC;<br>SHIFT4 CORP.; AND SHIFT4<br>PAYMENTS, LLC,<br><br>                              Defendants. | Case No.:  3:18-cv-00786-L-AGS<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS [ECF NO. 19]** |

        Pending before the Court is Defendants Lighthouse Network, LLC, SHIFT4 Corporation, and SHIFT4 Payments, LLC's ("Defendants" or "Shift4") motion to dismiss Plaintiff Payment Logistics Limited's ("Plaintiff" or "PLL") first amended complaint.  The Court decides the matter on the papers submitted and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons stated below, the Court **GRANTS** Defendants' motion.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## I. BACKGROUND

This antitrust case arises out of a vertical merger that united all three levels of the payment processing in the credit and debit card payment industry.[1] The merger at issue is a purchase of three point-of-sale ("POS") companies—Restaurant Manager, Future POS, and POSitouch—and one payment interface, Shift4 Corporation (the "Merger"), by a merchant account service provider ("MAS"), Defendant Lighthouse Network. At each level of the payment processing market, it seems, there are multiple competitors vying to serve various types of merchants. Plaintiff PLL is a payment interface competitor that serves mid-to-large table-service restaurants ("MLTSR"). PLL seeks to prevent the Merger because it believes the Merger will substantially lessen the competition among payment interfaces servicing POS companies owned by Defendant and in the broader payment interface market.

Accordingly, PLL filed a complaint for violations of federal antitrust laws against Defendants on April 24, 2018. *See* ECF No. 1. PLL alleges the following three claims: (1) Illegal merger in violation of section seven of the Clayton Act, 15 U.S.C. § 18; (2) monopolization in violation of section two of the Sherman Act, 15 U.S.C. § 2; and attempted monopolization in violation of section two of the Sherman Act. *See id.* On June 15, 2018, Defendants filed a motion to dismiss PLL's Complaint for failure to state a claim and a request to take judicial notice in support of Defendants' motion.[2] ECF Nos. 19, 20. PLL filed its opposition to Defendants' motion to dismiss and request for judicial notice

---

[1] The three levels of payment processing are as follows: (1) Point of sale ("POS"), systems where merchants enter orders and accept credit cards; (2) payment interfaces, conduits that receive and process credit card transaction data from merchants' POS and send it payment processors; and (3) merchant account service providers ("MAS"), payment processors that receive data from payment interfaces or POS systems and send the data to banks and credit card companies.

[2] Defendants filed a Request for Judicial Notice in this case. ECF No. 20. Plaintiff opposed Defendants' request. ECF No. 31. Plaintiff objected that the contents of the request (press releases, Form 10-Ks, and webpage timelines) did not meet the requirements of Federal Rule of Evidence 201 as they neither are relied upon in the complaint nor a matter of public record. *See id.* The Court **DENIES AS MOOT** Defendants' request as those exhibits were not used in reaching the Court's ruling. *See Medina v. City of San Diego*, 2012 WL 1033019, at *6 (S.D. Cal. Mar. 26, 2012).

on August 3, 2018.  ECF Nos. 30, 31.  On August 17, 2018, Defendants filed replies in support of the motion to dismiss and request for judicial notice.  ECF Nos. 33, 34.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.2d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id*. at 1965.  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

## III.   DISCUSSION

Defendants contend Plaintiff's Complaint should be dismissed for the following three reasons: (a) PPL failed to define a relevant market; (b) PLL failed to allege that Shift4 possesses market power in either alleged relevant market; and (c) PLL fails to allege an injury to competition.  *See* ECF No. 19-1.  The Court addresses each contention in turn.

/ / /

### a. PLL Has Not Defined a Relevant Product Market

To properly state an antitrust claim under the Sherman Act, plaintiffs must plead a relevant market. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044-45 (9th Cir. 2008). Although plaintiffs are not required to plead a relevant market with specificity, "[t]here are . . . some legal principles that govern the definition of an antitrust 'relevant market' and a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Id.* at 1045. Both a geographic and a product market must be included in a relevant market. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999). A product market "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus.*, 513 F.3d at 1045. Within relevant product markets, economic substitutes have a "reasonable interchangeability of use" or sufficient "cross-elasticity of demand" with the relevant product. *Id.* (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)). A relevant market lacking economic substitutes falls short of incorporating "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Id.* (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)). "[W]ell-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes." *Brown Shoe*, 370 U.S. at 325. To bring an antitrust claim grounded on a submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Newcal Indus.*, 513 F.3d at 1045. The Supreme Court laid out " practical indicia" of an economically distinct submarket in *Brown Shoe*: "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, sensitivity to price changes, and specialized vendors." 370 U.S. at 325.

PLL alleges the following two relevant product markets in the Complaint: (1) Payment interfaces for Defendant-Owned POS systems for MLTSR; and (2) payment interfaces for POS systems specializing in MLTSR. ECF No. 1 at 24-25. PLL also alleges

that the relevant geographic market for both alleged product markets is the United States. *Id.* at 26.[3]

Defendants contend PLL's Complaint fails to allege why the relevant market is limited to payment interfaces for POS systems servicing MLTSR. ECF No. 19-1 at 15-16. Specifically, Defendants assert that PPL arbitrarily defines the bounds of the payment interface market servicing MLTSR. *Id.* at 17. However, the Court disagrees as Plaintiff seems to define its relevant market as a submarket of a broader payment interface market. *See, e.g.*, *Brown Shoe*, 370 U.S. at 325. "The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Ibid.* To this point, PLL has yet to engage in discovery where presumably it hopes to identify the areas of actual or potential competition that are economically significant enough to define the relevant submarket. *Thurman Indus.*, 875 F.3d at 375. At this stage of the litigation, the Court finds that Plaintiff's relevant market allegations are not so conclusory that dismissal is warranted for this reason.

Defendants also contend that PLL does not define the set of economic substitutes for PLL's payment interface product. ECF No. 19-1 at 18. In particular, Defendants assert that PLL artificially limits the payment interface market by excluding POS systems that connect directly to MAS systems. *Id.* at 17-18. A product market "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus.*, 513 F.3d at 1045. Defendants correctly highlight that PLL's currently-pled relevant market excludes POS systems with direct connections to MAS systems, like Digital Dining and Dinerware. *See* ECF No. 1 at 26, 28. Although PLL alleges that "direct connections are

---

[3] Defendants have not raised any argument claiming that the alleged geographic market is improper. ECF No. 19-1 at 15-19. For that reason, the Court will only address PLL's relevant product market allegations.

typically used by large, enterprise restaurants with more than ten locations[,]" the Court finds that this allegation does not remove direct connections from the market as an economic substitute. PLL excludes direct connection POS systems, claiming that the expense and need for sophisticated, internal technology personnel would be too onerous for MLTSR. *See* ECF No. 1 at ¶ 30. That conclusion is not sufficient as PLL did not allege facts supporting that there is no "reasonable interchangeability of use" or sufficient "cross-elasticity of demand" for direct connection POS systems in the MLTSR payment interface market. It is undisputed that POS systems with direct connection capability share a relevant functionality with payment interfaces—to securely collect and transfer payment transaction data between the POS system and the MAS. *Thurman Indus.,* 875 F.2d at 1374 (defining relevant market as "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business []"). For that reason, the Court infers that reasonable interchangeability of use exists for direct connection POS systems within the payment interface products. As such, the Court finds PLL's definition for payment interfaces for POS systems specializing in MLTSR market is facially unsustainable and **GRANTS** the Defendants' motion to dismiss.

Moreover, as currently alleged, this case is not one where a single brand of a product or service can be a relevant market. *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481-82 (1992). In *Eastman Kodak*, the Supreme Court found that the relevant market was comprised of "only those companies that service Kodak machines" since "service and parts for Kodak equipment are not interchangeable with other manufacturers' service and parts[.]" *Eastman Kodak*, 504 U.S. at 482. The Supreme Court reasoned that "[t]he relevant market for antitrust purposes is determined by the choices available to Kodak owners." *Id.* at 481-82 (citation omitted).

PLL has not factually alleged how MLTSR merchants could not, at the time of contract execution, confirm whether use of Defendants' POS systems obligates merchants to solely use of the Shift4 Corp. payment interface. The payment interfaces market is not unique to Defendants' POS systems servicing MLTSR merchants. In fact, Defendants'

POS Systems, Restaurant Manager, Future POS, POSitouch, and Lighthouse were serviced by multiple payment interfaces prior to the merger—PLL, DataCap and PAX. PLL now speculates that, post-merger, MLTSR merchants would be locked in to Defendants' payment interface, Shift4 Corp., if Defendants began charging additional fees to use other available payment interfaces, not that the choices of interfaces available diminished due to the merger. POS dealers and MLTSR merchants are free to negotiate and contract with Defendants' POS systems in whatever manner they deem fiscally beneficial. While PLL alleges that "contracts are complex and negotiated with the POS Dealer rather than the merchant," the Court cannot reasonably infer that merchants could not instruct their POS dealer to negotiate terms that would allow the merchant to change payment interfaces at will. *See* ECF No. 1 at ¶ 31. As such, the Court finds this market definition unsuitable to the extent explicit contractual provisions form the boundaries of the submarket. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997). In addition, PLL has not alleged any practical indicia of an economically distinct submarket. Accordingly, the Court finds PLL's market definition for Payment interfaces for Defendant-Owned POS systems for MLTSR unsuitable and **GRANTS** the Defendants' motion to dismiss.

**b. PLL Has Failed to Allege Sufficient Market Power in Either Alleged Market**

"A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Milk Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 972 (9th Cir. 2008). There are two way to prove market power, direct or circumstantial evidence. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). When using direct evidence, a plaintiff must "put [] forth evidence of restricted output and supra competitive prices . . ." *Id.* However, use of circumstantial evidence requires a plaintiff to "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.* (Internal citation omitted). Where, as here, PLL fails to sufficiently allege a relevant market definition, the Court deems it is impossible to determine market power. As such, the Court finds that PLL

has failed to sufficiently allege market power as the relevant market has not been sufficiently defined yet. Accordingly, the Court **GRANTS** Defendants' motion on this ground.

### c. PLL Failed to Allege an Antitrust Injury

Mergers or acquisitions "in any line of commerce or in any activity affecting commerce in any section of the country, [where] the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly" are prohibited by section seven of the Clayton Act. 15 U.S.C. § 18. To state a section seven claim, like any antitrust claim, a plaintiff must allege an antitrust injury—some harm to competition resulting from defendant's behavior. *Pool Water Prods. V. Olin*, 258 F.3d 1024, 1034 (9th Cir. 2001). Under this section, a plaintiff must allege that the acquisition will create an appreciable danger of anticompetitive consequences. *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 364 (1963). Injury to competition requires allegations that competition itself has been injured rather than merely competitors. *Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987). To allege an injury to competition, plaintiff must allege (1) the relevant markets in which competition has been injured and (2) the anticompetitive effects caused by the alleged restraint within the markets with factual detail. *Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (citing *Rutman Wine*, 829 F.2d at 736). "[A] claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail." *Id.*

As follows from the Court's reasoning above, PLL did not allege an antitrust injury because PLL failed to include direct connection POS systems into the relevant markets or explain with sufficient factual detail why they should not be included. Accordingly, the Courts **GRANTS** Defendants' motion on this ground and will not discuss the sufficiency of the anticompetitive effect allegations.

///

///

///

3:18-cv-00786-L-AGS

**d. Leave to Amend Complaint**

When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations omitted). Here, PLL requests leave to amend its complaint. The Court finds that the deficiencies in the initial complaint could be cured by amendment. As such, the Court **GRANTS** PLL's request for leave to amend its initial complaint.

**IT IS SO ORDERED.**

Dated:  October 23, 2018

Hon. M. James Lorenz
United States District Judge