# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Payment Logistics Limited, | Case No. 18-cv-00786-L-AGS |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [ECF No. 25]** |
| Lighthouse Network LLC, and Shift4 Corporation, and Shift4 Payments, LLC, | |
| Defendants. | |

Pending before the Court is Plaintiff Payment Logistics Limited's ("Plaintiff" or "PLL") motion for preliminary injunction seeking to enjoin the vertical merger of three levels of payment processing by Defendants Lighthouse Network, LLC, SHIFT4 Corporation, and SHIFT4 Payments, LLC's ("Defendants" or "Shift4"). The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** Defendants' motion.

//
//
//
//

## I. BACKGROUND

This antitrust case arises out of a vertical merger that united all three levels of the payment processing in the credit and debit card payment industry.[1] The merger at issue is a purchase of three point-of-sale ("POS") companies—Restaurant Manager, Future POS, and POSitouch—and one payment interface, Shift4 Corporation (the "Merger"), by a merchant account service provider ("MAS"), Defendant Lighthouse Network. At each level of the payment processing market, it seems, there are multiple competitors vying to serve various types of merchants. Plaintiff PLL is a payment interface competitor that serves mid-to-large table-service restaurants ("MLTSR"). PLL seeks to prevent the Merger because it believes the Merger will substantially lessen the competition among payment interfaces servicing POS companies owned by Defendant and in the broader payment interface market.

Accordingly, PLL filed a motion for preliminary injunction. ECF No. 25. PLL subsequently filed a supplemental brief in support of the motion for preliminary injunction. ECF No. 53. Shift4 opposed the supplemental motion. ECF Nos. 64. PLL then filed its reply. ECF No. 67. Each filing, after the initial motion for preliminary injunction, was accompanied by a motion to file certain portions of the briefs and supporting documentation under seal.[2] *See* ECF No. 54, 65, 68.

## II. LEGAL STANDARD

A party seeking preliminary injunctive relief must demonstrate "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4)

---

[1] The three levels of payment processing are as follows: (1) Point of sale ("POS"), systems where merchants enter orders and accept credit cards; (2) payment interfaces, conduits that receive and process credit card transaction data from merchants' POS and send it payment processors; and (3) merchant account service providers ("MAS"), payment processors that receive data from payment interfaces or POS systems and send the data to banks and credit card companies.

[2] The Court finds compelling reasons exist to file the specified documents under seal that outweigh the public's interest in disclosure. Therefore, each motion to file documents under seal [ECF No. 54, 65, 68] is GRANTED.

that an injunction is in the public's interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (internal citation and quotation marks omitted). Alternatively, a preliminary injunction can be obtained when "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," allowing preservation of the status quo when further inspection or deliberation is necessary. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## III. DISCUSSION

### LIKELIHOOD OF SUCCESS ON THE MERITS

Both a geographic and a product market must be included in a relevant market. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999). A product market "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus.*, 513 F.3d at 1045. Within relevant product markets, economic substitutes have a "reasonable interchangeability of use" or sufficient "cross-elasticity of demand" with the relevant product. *Id.* (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)). A relevant market lacking economic substitutes falls short of incorporating "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Id.* (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)). "[W]ell-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes." *Brown Shoe*, 370 U.S. at 325. To bring an antitrust claim grounded on a submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Newcal Indus.*, 513 F.3d at 1045. The Supreme Court laid out "practical indicia" of an economically distinct submarket in *Brown Shoe*: "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, sensitivity to price changes, and specialized

vendors." 370 U.S. at 325.

PLL asserts that the two relevant product markets[3] here are "(1) Payment Interfaces for Defendant-Owned POS Systems for MLTSR[] and (2) Payment Interfaces for Other POS Systems for MLTSR[.]" ECF No. 25-1 at 17. Shift4 contends that the "markets are improperly defined because they exclude relevant products, competitors, and customers." ECF No. 66 at 12. The Court agrees with Shift4's contention. As the Court explained in its October 24, 2018 order granting Shift4's motion to dismiss, the Court finds that PLL's proposed relevant market does not include all economic substitutes for the PLL's payment interfaces. *See* ECF No. 57; *Newcal Indus.*, 513 F.3d at 1045. PLL asserts that cloud-based and enterprise systems' operational features are not realistic alternatives for MLTSR customers. ECF No. 25-1 at 18-19. However, the evidence demonstrates that restaurant customers have considered and even installed cloud-based systems. *See* ECF No. 25-6 at 3-4. For that reason, the Court finds a "reasonable interchangeability of use" or "cross-elasticity of demand" remains between these competing payment systems.

Also, PLL's contention that the payment interfaces market here is akin to the service parts aftermarket as illustrated in *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481-82 (1992) is off base. Unlike the Kodak service parts, which were not interchangeable, the payment interfaces market is not unique to Defendant's POS systems servicing MLTSR merchants. In fact, Shift4's POS Systems, Restaurant Manager, Future POS, POSitouch, and Lighthouse were serviced by multiple payment interfaces prior to the merger—PLL, DataCap and PAX. *See* ECF No. 25-6. PLL has not shown that a raised price, or "toll," to use a competitor's payment interface forecloses that competitor's interchangeability of use on Shift4's POS platforms. Neither has PLL shown that an increase cost to the merchant consumer affects competitors to integrate on Shift4's or other's POS

---

[3] The parties agree that the relevant geographic market is the United States. *See* ECF Nos. 25-1 at 17 fn. 56, 66 at 12 fn. 6.

systems. As such, the Court finds that the evidence does not support Shift4's POS systems as single brand relevant market.

In addition, the record is rife with examples of merchant customers willfully selecting Shift4 over PLL for procompetitive reasons, such as waived fees, lower prices, and more customized features. *See* ECF Nos. 25-16, 53-25; *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 895 (9th Cir. 2008) ("Bundled discounts generally benefit buyers because the discounts allow the buyer to get more for less[]"); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S.2, 12 (1984) ("Buyers often find package sales attractive; a seller's decision to offer such packages can merely be an attempt to compete effectively—conduct that is entirely consistent with the Sherman Act[]"). Thus, the Court finds that the evidence demonstrates consumer support of discounted bundled packages rather than being "locked in" to Shift4's payment interface.

Moreover, PLL has not defined a relevant product submarket using the practical indicia of an economically distinct submarket. For the foregoing reasons, the Court finds PLL has not sufficiently shown a relevant payment interface market or submarket. Accordingly, PLL failed to establish a relevant market for antitrust analysis, a "necessary predicate" for success on the merits of PLL's Clayton Act claim. *See Malaney v. UAL Corp.*, 434 Fed.Appx.620 (9th Cir. 2011).

## IV. CONCLUSION

For the reasons stated above, PLL's motion for preliminary injunction [ECF No. 25] is DENIED.

**IT IS SO ORDERED.**

Date: March 18, 2019

Hon. M. James Lorenz
United States District Judge