UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYMENT LOGISTICS LIMITED,<br><br>                                    Plaintiff,<br><br>v.<br><br>LIGHTHOUSE NETWORK, LLC; SHIFT4 CORP.; AND SHIFT4 PAYMENTS, LLC,<br><br>                                    Defendants. | Case No.:  3:18-cv-00786-L-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 70]** |

Pending before the Court is Defendants Lighthouse Network, LLC, SHIFT4 Corporation, and SHIFT4 Payments, LLC's ("Defendants" or "Shift4") motion to dismiss Plaintiff Payment Logistics Limited's ("Plaintiff" or "PLL") first amended complaint. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

I. **BACKGROUND**

This antitrust case arises out of a vertical merger that united all three levels of the payment processing in the credit and debit card payment industry.[1] The merger at issue is a purchase of three point-of-sale ("POS") companies—Restaurant Manager, Future POS, and POSitouch—and one payment interface, Shift4 Corporation (the "Merger"), by a merchant account service provider ("MAS"), Defendant Lighthouse Network. At each level of the payment processing market, it seems, there are multiple competitors vying to serve various types of merchants. Plaintiff PLL is a payment interface competitor that serves mid-to-large table-service restaurants ("MLTSR"). PLL seeks to prevent the Merger because it believes the Merger will substantially lessen the competition among payment interfaces servicing POS companies owned by Defendant and in the broader payment interface market.

Accordingly, PLL filed a complaint for violations of federal antitrust laws against Defendants on April 24, 2018. *See* ECF No. 1. On June 15, 2018, Defendants filed a motion to dismiss PLL's Complaint for failure to state a claim and a request to take judicial notice in support of Defendants' motion. ECF Nos. 19, 20. After the parties fully briefed both motions, the Court granted Defendants' motion to dismiss mainly due to PLL's failure to sufficiently allege a relevant market definition on October 24, 2018.[2] *See* ECF Nos. 30, 31, 33, 34, 57.

---

[1] The three levels of payment processing are as follows: (1) Point of sale ("POS"), systems where merchants enter orders and accept credit cards; (2) payment interfaces, conduits that receive and process credit card transaction data from merchants' POS and send it payment processors; and (3) merchant account service providers ("MAS"), payment processors that receive data from payment interfaces or POS systems and send the data to banks and credit card companies.

[2] Defendants also filed a Request for Judicial Notice. ECF No. 20. Plaintiff opposed Defendants' request. ECF No. 31. Plaintiff objected that the contents of the request (press releases, Form 10-Ks, and webpage timelines) did not meet the requirements of Federal Rule of Evidence 201 as they neither are relied upon in the complaint nor a matter of public record. *See id.* The Court DENIED AS MOOT Defendants' request as those exhibits were not used in reaching the Court's ruling. *See Medina v. City of San Diego*, 2012 WL 1033019, at *6 (S.D. Cal. Mar. 26, 2012).

On November 9, 2018, PLL filed a first amended complaint ("FAC"). *See* ECF No. 59. PLL again alleges the following three claims: (1) of section seven of the Clayton Act, 15 U.S.C. § 18; (2) monopolization in violation of section two of the Sherman Act, 15 U.S.C. § 2; and (3) attempted monopolization in violation of section two of the Sherman. *See id.* PLL adds a tying claim, a violation of section one of Sherman Act, 15 U.S.C. § 1, against Defendants. *See id.* Defendants again filed a motion to dismiss PLL's FAC. The matter has been fully briefed by the parties and is ready for disposition.

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.2d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

## III. DISCUSSION

Defendants contend the FAC should be dismissed for the following three reasons: (a) PPL failed to define a relevant market; (b) PLL failed to allege that Shift4 possesses market power in either alleged relevant market; (c) PLL fails to allege an antitrust injury; and (d) PLL failed to allege a tying claim. *See* ECF No. 70-1.

### a. PLL Has Defined a Relevant Product Market

To properly state an antitrust claim under the Sherman Act, plaintiffs must plead a relevant market. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044-45 (9th Cir. 2008). Although plaintiffs are not required to plead a relevant market with specificity, "[t]here are . . . some legal principles that govern the definition of an antitrust 'relevant market' and a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Id.* at 1045. Both a geographic and a product market must be included in a relevant market. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999). A product market "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus.*, 513 F.3d at 1045. Within relevant product markets, economic substitutes have a "reasonable interchangeability of use" or sufficient "cross-elasticity of demand" with the relevant product. *Id.* (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)). A relevant market lacking economic substitutes falls short of incorporating "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Id.* (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)). "[W]ell-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes." *Brown Shoe*, 370 U.S. at 325. To bring an antitrust claim grounded on a submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Newcal Indus.*, 513 F.3d at 1045. The Supreme Court laid out " practical indicia" of an economically distinct submarket in *Brown Shoe*: "industry or public recognition of the submarket as a separate economic entity, the

product's peculiar characteristics and uses, unique production facilities, distinct customers, sensitivity to price changes, and specialized vendors." 370 U.S. at 325.

PLL alleges the following two relevant product markets in the FAC: (1) Payment interfaces for Defendant-Owned POS systems for MLTSR; and (2) payment interfaces for POS systems specializing in MLTSR. ECF No. 88 at 31-32.[3] PLL also alleges that the relevant geographic market for both alleged product markets is the United States. *Id.* at 33.[4]

Defendants contend PLL's FAC fails to allege a relevant market for payment interfaces servicing MLTSR POS systems because it excludes POS systems with direct connections to MAS platforms. ECF No. 70-1 at 12-15. Defendants assert that PLL fails to allege all economic substitutes for PLL's payment interface product. ECF No. 70-1 at 12-13. In particular, Defendants assert that PLL artificially excludes POS systems that connect directly to MAS systems. *Id.* at 17-18. A product market "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus.*, 513 F.3d at 1045. Defendants correctly highlight that PLL's currently-pled relevant market excludes POS systems with direct connections to MAS systems, like Digital Dining and Dinerware. *See* ECF No. 70-1 at 12-13. Although PLL alleges that "direct connections are typically used by the larger 'Traditional Legacy POS'" systems, the Court again finds that this allegation does not remove direct connections from the market as an economic substitute. PLL excludes direct connection POS systems, now claiming that the technology is outdated and not EMV complaint. *See* ECF No. 70-1 at ¶ 30. That conclusion is not sufficient as there is "reasonable interchangeability of use" for direct connection POS systems in the MLTSR payment interface market. It is undisputed that POS systems with direct connection capability share a relevant functionality with payment interfaces—to

---

[3] The Court cites Plaintiff's FAC filed under seal upon the Court's approval. *See* ECF No. 86.
[4] Defendants have not raised any argument claiming that the alleged geographic market is improper. *See* ECF No. 70-1. For that reason, the Court will only address PLL's relevant product market allegations.

securely collect and transfer payment transaction data between the POS system and the MAS. *See* ECF No. 75 at 17; *Thurman Indus.*, 875 F.2d at 1374 (defining relevant market as "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business []").

However, PLL contends "cross-elasticity of demand" does not exist here because it would cause merchants significant expense and other burdens. *Id.* at 17. The Court disagrees as PLL's allegations concede that merchants do not consider with payment processing when initially electing a POS system. *See* ECF No. 88 at ¶ 31-32. As such, direct-connection POS systems remain economic substitutes because the Court infers that restaurants would elect a direct connection POS system if it met the restaurant's criterion due to its comparable functionality with MLTSR payment interfaces. The FAC must allege facts that rising costs for payment interfaces servicing MLTSR POS systems would not cause consumers to consider switching to direct connection POS systems. *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F.Supp.2d at 1048, 1075 (D. Colo. 2004). PLL's assumption that direct-connection POS systems will become obsolete is speculative and excluding those competitors does not represent the breadth of competition in the MLTSR payment interface market. As such, the Court finds that PLL's market definition for payment interfaces servicing MLTSR POS systems remains facially unsustainable and **GRANTS** the Defendants' motion to dismiss.

On the other hand, the FAC's allegations demonstrate that the payment interface market servicing Defendants' POS systems may have transformed into a *Kodak* market. *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481-82 (1992). In *Eastman Kodak*, the Supreme Court found that the relevant market was comprised of "only those companies that service Kodak machines" since "service and parts for Kodak equipment are not interchangeable with other manufacturers' service and parts[.]" *Eastman Kodak*, 504 U.S. at 482. The Supreme Court reasoned that "[t]he relevant market for antitrust purposes is determined by the choices available to Kodak owners." *Id.* at 481-82 (citation omitted).

PLL has factually alleged that MLTSR merchants could not choose a non-Shift4 payment interface. The FAC alleges that, beginning May 1, 2018, all merchants will be required to use the Shift4 payment interface, whether the merchant is brand new or an existing customer. ECF No. 88 at ¶ 61; *Eastman Kodak*, 504 U.S. at 481-82 ("The relevant market for antitrust purposes is determined by the choices available Kodak equipment owners."). Likewise here, the relevant payment interfaces market is limited to MLTSR merchants who own Defendants' POS systems. Prior to the merger, Defendants' POS Systems, Restaurant Manager, Future POS, POSitouch, and Lighthouse were serviced by multiple payment interfaces—PLL, DataCap and PAX. PLL now alleges that MLTSR merchants which own Defendants' POS equipment would be locked in to Defendants' payment interface, Shift4 Corp., due to Defendants' prohibition. Determination of the appropriate market definition in this case requires a factual inquiry into the "commercial realities" faced by merchants. *Eastman Kodak*, 504 U.S. at 482 (citing *U.S. v. Grinnell Corp.*, 384 U.S. 563, 572 (1966)). Accordingly, the Court finds that PLL's market definition for Payment interfaces for Defendant-owned POS systems survives Rule 12(b)(6) scrutiny and **DENIES** the Defendants' motion to dismiss.

### b. PLL Has Alleged Sufficient Market Power in the Payment Interfaces Market for Defendants' POS Systems

"A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Milk Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 972 (9th Cir. 2008). There are two way to prove market power, direct or circumstantial evidence. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). When using direct evidence, a plaintiff must "put [] forth evidence of restricted output and supra competitive prices . . ." *Id.* However, use of circumstantial evidence requires a plaintiff to "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.* (Internal citation omitted). Where, as here, PLL fails to sufficiently allege a relevant market definition for

the payment interface market for MLTSR generally, the Court deems it is impossible to determine market power. As such, the Court finds that PLL has failed to sufficiently allege market power as the relevant market has not been sufficiently defined yet. Accordingly, the Court **GRANTS** Defendants' motion on this ground.

However, since the Court found PLL sufficiently alleged a relevant market definition for payment interfaces servicing Defendants' POS systems, the Court evaluates the sufficiency of the FAC' allegations of market power. The Court finds the final two prongs of the market power inquiry are alleged as the FAC sets forth facts that a post-merger scheme exists to "'migrate all processing' to the Shift4 network" and a requirement that new and existing merchants be required to use the Shift4 payment interface beginning May 1, 2018. *See* ECF No. 88. Moreover, the FAC alleges a significant barrier to entry where the interface fees of $25 per month plus $0.03 per transaction are imposed on merchants using independent interfaces. *Id.* Accordingly, the Court **DENIES** Defendants' motion as it pertains to Defendants' market power in the payment interfaces market for Defendants' POS systems.

### c. PLL Failed to Allege an Antitrust Injury

Mergers or acquisitions "in any line of commerce or in any activity affecting commerce in any section of the country, [where] the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly" are prohibited by section seven of the Clayton Act. 15 U.S.C. § 18. To state a section seven claim, like any antitrust claim, a plaintiff must allege an antitrust injury—some harm to competition resulting from defendant's behavior. *Pool Water Prods. V. Olin*, 258 F.3d 1024, 1034 (9th Cir. 2001). Under this section, a plaintiff must allege that the acquisition will create an appreciable danger of anticompetitive consequences. *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 364 (1963). Injury to competition requires allegations that competition itself has been injured rather than merely competitors. *Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987). To allege an injury to competition, plaintiff must allege (1) the relevant markets in which competition has been injured and (2)

the anticompetitive effects caused by the alleged restraint within the markets with factual detail. *Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (citing *Rutman Wine*, 829 F.2d at 736). "[A] claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail." *Id.* To plead an antitrust injury in a monopolization and a tying claim, a plaintiff must plead four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt, Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Antitrust law is intended to prevent "harm to the process of competition and consumer welfare, not harm to individual competitors." *LiveUniverse, Inc. v. Myspace, Inc.*, 304 Fed.Appx. 554, 557 (9th Cir. 2008).

The FAC does not satisfy these standards. The FAC generally alleges Defendants unlawfully tied its POS, Interface, and MAS products together to foreclose a substantial volume of commerce in the relevant market. ECF No. 88 at 7, ¶ 98. However, the Court finds that PLL has not alleged an injury to competition, only itself. *See Atl. Ritchfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 337 n.7 (1990) (the Supreme Court rejecting that "antitrust injury requirement could be satisfied by a showing that the 'long-term' effect of the maximum-price agreements could be to eliminate retailers and ultimately to reduce competition"). "[R]emoval of one or a few competitors need not equate with injury to competition." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989). The FAC fails to allege an antitrust injury to the *competition* in payment interfaces markets. The visual illustration of the MLTSR payment interface market shows a new payment interface, Cayan, in the general MLTSR payment interface market, which cuts against PLL's notion that "[b]arrier[] to entry [is] high[] and new entry is neither likely, timely, or sufficient to replace the competition lost as a result of the acquisition." *See* ECF No. 88 at ¶ 77. It seems evident to the Court that, while PLL complains about a not-for-certain lost business opportunity to service one of Defendants' newly acquired POS systems, competition has been readily developing new partnerships. For example, the two

other MLTSR payment interface systems that serviced the POS systems Defendants' acquired, Datacap and PAX, have since strengthened or entered other partnerships with other POS companies. *Compare* ECF No. 88 at 34, 38. By PLL's account, the MLTSR POS systems markets shifted into a period of consolidation years ago, which increased competition in the closed POS system-payment interface-MAS networks. *See* ECF No. 88 at ¶ 55. *Surf City Steel, Inc. v. Int'l Longshore and Warehouse Union*, 2017 WL 5973279, at *9 (N.D. Cal. Mar. 7, 2017) ("The fact that one competitor took the place of another competitor in the relevant market does not, on its own, constitute harm to competition.") (see citing *Pool Water Prods. V. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) (holding that a shift in market share "affects competitors, not competition" and "in and of itself . . . does not amount to antitrust injury"). As such, the Court finds that PLL has not alleged why Defendants' actions since the Merger go beyond facilitating the best economic arrangement for itself to the point of an antitrust injury to in either alleged relevant markets. *See PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 2987322 (N.D. Cal. July 2, 2014) ("Any entity engaged in commerce will generally pick a better economic arrangement than a worse economic arrangement. The question is whether competition has been harmed, not just whether a competitor lost out on a deal.")

Accordingly, the Court dismisses all claims in the FAC as PLL failed to sufficiently allege an antitrust injury to competition in the MLTSR payment interface markets. Therefore, Defendants' motion to dismiss is **GRANTED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### d. Leave to Amend Complaint

When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations omitted). Here, PLL requests leave to amend its complaint. The Court finds that the deficiencies in the initial complaint could be cured by amendment. As such, the Court **GRANTS** PLL leave to amend its complaint.

**IT IS SO ORDERED.**

Dated: September 30, 2019

_____
Hon. M. James Lorenz
United States District Judge